**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 09-cv-00451-REB

MAX L. HULSEY,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING COMMISSIONER**

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1], filed March 4, 2009, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that he is disabled as a result of weakness post-resection of a cancerous tumor in his right arm and cervical disc disease. After his application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on November 8, 2007. At the time of the hearing, plaintiff was 52 years old. He has a high school education and two years of college courses and past relevant work experience as a construction laborer and municipal maintenance worker. He has not engaged in substantial gainful activity since

his alleged date of onset, January 15, 2005.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  Other alleged impairments, including diabetes and hypertension, were found not severe.  The ALJ found that plaintiff had the residual functional capacity to perform light work with lift/carry limitations in the right upper extremity and postural limitations on the ability to crawl and lift above waist height.  Although these findings precluded plaintiff's past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the local and national economies that he could perform.  He therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the

claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  **Id.**  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  **Casias v. Secretary of Health & Human Services**, 933

F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff maintains that the ALJ erred in adopting the opinion of a state agency physician who merely reviewed plaintiff's medical records over that of his treating physician, an error which he claims infected the judge's determination of his residual functional capacity. He further claims that the ALJ failed to sustain his burden at step five of the sequential evaluation to show that the alternative jobs identified as being within plaintiff's residual functional capacity existed in sufficient numbers in the local and national economies. As none of these arguments has merit, I affirm.

The record in this case essentially contains two competing residual functional capacity assessments. Dr. Ross Wilkins, the orthopedic surgeon who removed the cancerous hystiocytoma from plaintiff's upper right arm in 2003, stated that plaintiff could lift less than 10 pounds frequently, was required to periodically alternate sitting and standing, had limited ability to push and pull with the upper extremities, could not climb, balance, or crawl, and could only occasionally reach in all directions. (Tr. 109-112.) A state agency physician, Dr. Karl T. Chambers, on the other hand, found that plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently with his right arm and 10 pounds frequently and 20 pounds occasionally with the left arm. Dr. Chambers limited plaintiff to occasional pushing and pulling with the right arm, and further stated that plaintiff could not lift above waist height with the right arm. (Tr. 192-200.) Two other reviewing physicians agreed with Dr. Chambers's assessment. (*See* Tr. 201-202, 203-204.)

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *Watkins*, 350 F.3d at 1300. A treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. *Watkins*, 350 F.3d at 1301. Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Although treating source opinions are not afforded any special significance or controlling weight in the determination of issues reserved to the Commissioner, such as residual functional capacity, *see* 20 C.F.R. § 404.1527(e); *Sosa v. Barnhart*, 2003 WL 21436102 at \*5 (D.

5

Kan. April 10, 2003), **adopted**, 2003 WL 21428384 (D. Kan. Jun. 17, 2003), "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted," **Social Security Ruling 96-8p**, 1996 WL 374184 at *7 (SSA July 2, 1996).

Here, the ALJ concluded that Dr. Wilkins's residual functional capacity assessment was not supported by the objective medical evidence. (Tr. 21.)[1] That determination is amply supported by the ALJ's substantive discussion of the medical evidence. (Tr. 19-21.) It is further supported by the contrary opinions of the consultative state agency physicians, on which the ALJ did rely, finding them more consistent with the evidence of record. (Tr. 192-200, 201-202, 203-204.) It is the province of the ALJ, not this court, to resolve such conflicts in the evidence. **Reyes v. Bowen**, 845 F.2d 242, 245 (10th Cir. 1988); **Gleason v. Apfel**, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999). I find no reversible error in the ALJ's weighing of the competing physician opinions here.[2]

Nor do I find any indication that the ALJ "cherry picked" the record for evidence favorable to his conclusions while ignoring contrary evidence. **See Robinson v.**

---

[1] It is true that the ALJ erroneously referred to Dr. Wilkins's residual functional capacity assessment as having been authored by plaintiff's regular treating physician, Dr. Joel Schlar. However, plaintiff fails to demonstrate what difference this error makes in analyzing the ALJ's ultimate conclusion that the restrictions set forth therein were not supported by the objective medical evidence. If the ALJ's determination in that regard is accurate, it is not clear how plaintiff is prejudiced by the erroneous attribution to a different treating source, *see Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988), especially when Dr. Schlar did not suggest any greater functional limitations than those found by Dr. Wilkins (*see* Tr. 261.)

[2] Even if there were error in this regard, it clearly was harmless. *See Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988). The vocational expert testified at the hearing that the more restrictive limitations asserted by Dr. Wilkins were entirely consistent with the alternative jobs he identified as being within plaintiff's residual functional capacity. (Tr. 293-294.)

**Barnhart**, 366 F.3d 1078, 1083 (10th Cir. 2004).  In this regard, plaintiff points out that even the ALJ was initially confused as to the rather cryptic notations on the form Dr. Chambers completed.  (*See* Tr. 290-291.)  Nevertheless, these hieroglyphs were interpreted by one of the subsequent consultative examiners to refer to different lifting capacities and push/pull restrictions for the right and left upper extremities.  (Tr. 203.) Plaintiff does not argue that such interpretations are inaccurate, and they are fully consistent with the medical evidence.

Plaintiff's reliance on the ALJ's consideration, in the alternative, of Dr. Wilkins's suggested functional limitations as evidence of cherry picking is perplexing, to say the least.  (*See* Plf. Br. at 21.)  The hypothetical posed to the vocational expert and recounted in the ALJ's opinion included nearly all the limitations plaintiff argues were ignored.  The remainder of plaintiff's argument, regarding the side effects of plaintiff's medications, is merely stated as a conclusion.  I do not consider such inadequately developed arguments.[3]  *See **Adler v. Wal-Mart Stores**,* Inc., 144 F.3d 664, 679 (10th Cir. 1998).

Plaintiff next asserts that the ALJ should have relied on the Medical-Vocational Guidelines, or "grids," at step five of the sequential evaluation, which interprets as directing a finding of disability.  To the contrary, it would have constituted error for the

---

[3] Even if I were required to address plaintiff's argument in this regard, I would find no error. The ALJ clearly addressed plaintiff's allegations of pain, but simply found them not credible to the extent alleged based on the objective medical findings, plaintiff's activities of daily living, and the limited, generally conservative treatment he had received.  All these considerations are appropriate under the Commissioner's regulations and caselaw interpreting them.  *See* 20 C.F.R. § 404.1529(c)(2) (objective medical evidence); **Wall v. Astrue**, 561 F.3d 1048, 1069 (10th Cir. 2009) (conservative treatment); **Ouellette v. Apfel**, 2000 WL 1262642 at *13 (N.D. Cal. Aug. 24, 2000) (activities of daily living bear on credibility "to the extent that the level of activity is in fact inconsistent with the claimed limitations"). Although the ALJ did not discuss the effects of Vicodin, which had recently been prescribed, on plaintiff's ability to work, plaintiff himself testified at the hearing that he had experienced no problems taking Vicodin (Tr. 288), and the ALJ clearly had that testimony in mind when questioning the vocational expert (*see* Tr. 296).  Any error in this regard therefore clearly was harmless.

ALJ to have done so, since "the grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular grid." ***Trimiar v. Sullivan***, 966 F.2d 1326, 1332-33 (10th Cir. 1992) (citation and internal quotation marks omitted).  That rule applies here because plaintiff's "exertional limitations prevent him from doing a full range of work in his residual function category." ***Id.*** at 1333.

Finally, plaintiff argues that the alternative jobs identified by the Commissioner at step five do not exist in sufficient numbers in the local and national economies to be considered significant.[4]  I disagree.  The Tenth Circuit has declined to adopt a bright line rule regarding what number of jobs may be considered "significant," finding that "[t]he decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation."  ***Id.*** at 1330 (citation and internal quotation marks omitted).  Of the three alternative jobs the vocational expert identified, there were more than 2,000 jobs in Colorado[5] and more than 138,000 nationally.[6]  (***See*** Tr. 292.)  This testimony supported the ALJ's conclusion that alternative jobs existed in significant numbers, and therefore satisfied the Commissioner's burden of proof at step five of the sequential evaluation.

---

[4] Although the ALJ stated only that jobs existed in significant numbers in the national economy, it is clear from his discussion of the evidence that he considered jobs existing within Colorado as well.  (***See*** Tr. 22-23.)

[5] Contrary to plaintiff's argument, whether any such jobs existed within a reasonable distance from his current residence is irrelevant.  ***See*** 20 C.F.R. § 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.  It does not matter whether – (1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work.").

[6] The vocational expert testified that the following jobs were within the hypothetical residual functional capacity posited by the ALJ: (1) dealer account investigator: 470 jobs in Colorado; 35,800 jobs nationally; (2) information clerk: 1,328 jobs in Colorado; 66,500 jobs nationally; and (3) surveillance system monitor: 380 jobs in Colorado; 36,000 jobs nationally.  (Tr. 292.)

9

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated February 19, 2010, at Denver, Colorado.

                                                    **BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge